UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ATALAYA SPECIAL OPPORTUNITIES FUND VII LP and MIDTOWN MADISON MANAGEMENT LLC,<br><br>      Plaintiffs,<br><br> v.<br><br>JIMMY ERIC WHITED,<br><br>      Defendant. | Docket No.<br><br>COMPLAINT |

Plaintiff Atalaya Special Opportunities Fund VII LP ("<u>Atalaya</u>") and its agent, Plaintiff Midtown Madison Management LLC ("<u>Midtown Madison</u>"), by their attorneys, as and for a Complaint against defendant Jimmy Eric Whited ("<u>Whited</u>") hereby allege as follows:

Summary of Action

1.      This is an action to enforce a guarantee and to recover compensatory damages from Defendant Jimmy Eric Whited.

The Parties

2.      Plaintiff Atalaya is a limited partnership organized under the laws of the state of Delaware and authorized to do business in the state of New York that maintains its place of business at 780 Third Avenue, New York, NY.

3.      Plaintiff Midtown Madison is a limited liability company organized under the laws of the state of Delaware and authorized to do business in the state of New York that maintains its place of business at 780 Third Avenue, New York, NY.

4.      On information and belief, Defendant Jimmy Eric Whited is a resident of the state of Florida with an address for service of process at Whited and Sons LLC, 3155 NW 77th Avenue, Miami, FL 33122, Attn: JD Horwitz.

Jurisdiction and Venue

5.      This Court has subject matter jurisdiction over the claims described herein under 28 U.S.C. § 1331(a)(1).

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2) and (3).

Facts Common to All Causes of Action

7. On March 4, 2019, Atalaya agreed to lend up to $35.5 million in principal (the "Loan") to a group of insurance businesses, whose equity interests were majority owned or controlled (directly or indirectly) by Defendant Jimmy Whited (the "Windhaven Entities").

8. The current amount due and owing under the Loan is approximately $30 million, which represents unpaid principal, interest, fees, costs, and expenses ("Outstanding Amount(s)").

9. The Loan was a sophisticated business transaction requiring the memorialization of a large number of complex terms and conditions pursuant to which Atalaya would agree to make the Loan.

10. In connection with the Loan, the parties entered into a credit agreement dated March 4, 2019, by and among the Windhaven Entities (Whited and Sons LLC, Windhaven Select, LLC, Windhaven Underwriters, LLC, Clutch Analytics, LLC, and Windhaven Insurance Holdings Corporation) as "Borrowers," Atalaya, as a Lender, and Midtown Madison, as Atalaya's administrative and collateral agent (the "Credit Agreement").

11. Pursuant to the Credit Agreement, Atalaya agreed to extend the Loan to the Windhaven Entities.

*The Validity Guaranty*

12. To secure the Windhaven Entities' obligations under the Credit Agreement, and as an important additional credit consideration, the parties also entered into a validity guaranty between the Defendant, Jimmy Whited, and Midtown Madison (the "Validity Guaranty"). The fundamental purpose of the Validity Guaranty was for Whited, as the owner, operator, and leader of the Borrowers, to stand behind the actions and omissions of the Borrowers in their obligations to Midtown Madison and Atalaya, as lenders.

13. In Section 1(a) of the Validity Guaranty, Whited (as Guarantor) "absolutely, unconditionally, and irrevocably" guaranteed to Midtown Madison for the benefit of Atalaya—and agreed to be liable to and to indemnify Midtown Madison for—all amounts due, including any related losses, with respect to the Loans contemplated under the Credit Agreement upon the occurrence of certain events detailed therein ("Trigger Events").

14. Whited also agreed that his liability to Plaintiffs included the on-demand payment of any out-of-pocket expenses, including reasonable attorneys' fees and expenses, arising from the enforcement of rights under the Validity Guaranty.

15. In the Validity Guaranty, Whited's guaranty becomes triggered by certain enumerated Trigger Events. For example, pursuant to Section 1(b)(iv) of the Validity Guaranty, titled "*Material Misstatement*," Whited's guaranty becomes triggered when any Windhaven Entity (called a "Company Party" in the Validity Guaranty), with Whited's knowledge or upon his direction, willfully or knowingly fails to disclose material information required in connection with the Credit Agreement (the "Material Misstatement Trigger").

16. Pursuant to Section 1(b)(v) of the Validity Guaranty, titled "*Hindrance*," Whited's guaranty becomes triggered when, upon a default under the Credit Agreement, any Company Party intentionally or willfully "prevents, delays or hinders" Atalaya's rights and remedies by taking any action resulting in material damage or diminution of Atalaya's collateral in connection with the Loan (the "Hindrance Trigger").

17. Pursuant to Section 1(b)(vi) of the Validity Guaranty, titled "*Interference with Collections*," Whited's guaranty becomes triggered when any Company Party interferes with payments or collections required to be made to or through an account subject to a deposit account control agreement ("DACA") pursuant to the Credit Agreement (the "Interference Trigger").

4

18. Pursuant to Section 1(b)(vii) of the Validity Guaranty, titled "*Failure to Cooperate*," Whited's guaranty becomes triggered when any Company Party, at the direction of Whited or with his knowledge, fails to assist in disposing, or assisting Atalaya in the collection of, amounts owed under any collateral held pursuant to the Credit Agreement (the "<u>Failure to Cooperate Trigger</u>").

19. And pursuant to Section 1(b)(viii) of the Validity Guaranty, titled "*Voluntary Bankruptcy*," Whited's guaranty becomes triggered when any "Loan Party" or "Subsidiary" thereof (both as defined in the Validity Guaranty by reference to the Credit Agreement): (a) commences a voluntary proceeding involving the liquidation, winding-up, bankruptcy, or similar efforts for relief from debts; (b) is subject to the appointment of, or is put in the possession of, a trustee, receiver, or liquidator in any such voluntary or involuntary proceeding; or (c) fails to pay debts as they became due (the "<u>Liquidation Trigger</u>").

20. The Loan closed on March 4, 2019.

*Triggers Occur*

21. On the date of the closing of the Loan, and with astonishing regularity thereafter, Whited consistently violated the Trigger Events contemplated in the Validity Guaranty. Whited's violations were numerous and frequent. His actions and omissions unquestionably led to significant losses for Midtown Madison and Atalaya that are recoverable under the Validity Guaranty.

22. At the closing of the Loan, Whited signed a Perfection Certificate on behalf of eleven (11) Windhaven Entities and represented, in a schedule attached and incorporated thereto, that there were a discrete number (twenty-eight (28)) of "deposit accounts, securities accounts, commodities accounts, and lockboxes."

23. Pursuant to Section 8(p) of the Credit Agreement, the Windhaven Entities agreed that all covenants, agreements, representations, and warranties, including those made in the Perfection Certificate, would continue so long as the Loan was outstanding.

24. Despite that continuing obligation, the Windhaven Entities did not reveal—until January 22, 2020, long after the Loan and Credit Agreement had closed—that they had been transmitting funds to **twenty-five (25) additional undisclosed accounts**.

25. Because those accounts had not been disclosed in the Perfection Certificate, Plaintiffs never received the corresponding DACAs, thus ultimately limiting and impairing the security interest to which Atalaya was entitled to under the Credit Agreement.

26. On numerous occasions in late January of 2020, Plaintiff informed Whited, the Windhaven Entities, and Greg Hoeg, the Chief Restructuring Officer from Alvarez & Marsal—then recently hired by Whited to try to save his businesses from disaster—that transfers to non-disclosed accounts without DACAs violated the Credit Agreement, and must cease immediately.

27. Indeed, Alvarez & Marsal made repeated written promises to Plaintiff that it would address immediately the use of non-disclosed accounts without DACAs in place. Despite that, the Windhaven Entities continued to utilize non-disclosed accounts and/or failed to put DACAs in place for those non-disclosed accounts.

28. The failure to disclose the existence of accounts in the Perfection Certificate described in paragraphs 22–27 above triggered Whited's guaranty under, at a minimum, the Material Misstatement Trigger and the Failure to Cooperate Trigger.

29. The failure to provide requisite DACAs for the undisclosed accounts described in paragraphs 22–27 above triggered Whited's guaranty under, at a minimum, the Hindrance Trigger.

30. The transmission of payments or collections through undisclosed accounts described in paragraphs 22–27 above triggered Whited's guaranty under, at a minimum, the Interference Trigger.

31. In connection with the Loan transaction, certain Windhaven Entities entered into a second lien credit agreement with Greenlight Reinsurance, Ltd. on March 4, 2019 (the "<u>Second Lien Credit Agreement</u>"). Whited executed the Second Lien Credit Agreement on behalf of all five signing Windhaven Entities, each one a Borrower from Atalaya as Lender under the Credit Agreement with Madison Management.

32. In the Second Lien Credit Agreement, each of those signing Windhaven Entities agreed to make payments thereunder on the first day of each fiscal quarter beginning April 2, 2019.

33. Despite that obligation, on information and belief, the Windhaven Entities failed to make payments required by the Second Lien Credit Agreement on December 1, 2019.

34. On December 30, 2019, a *Consent Order Appointing the Florida Department of Financial Services as Receiver of Windhaven Insurance Company for Purposes of Liquidation, Injunction, and Notice of Automatic Stay, Effective January 6, 2020* was entered in the Circuit Court of the Second Judicial Circuit, in and for Leon County, Florida against Windhaven Insurance Company ("WIC"), a Subsidiary of a Loan Party under the Credit Agreement.

35. On March 5, 2020, an *Order Appointing Liquidator, Permanent Injunction and Notice of Automatic Stay* was entered in the District Court of Travis County, Texas against Windhaven National Insurance Company ("WNIC"), a Subsidiary of a Loan Party under the Credit Agreement.

36. The events described in paragraphs 31–35 above triggered Whited's guaranty under the Liquidation Trigger.

37. As a result, Whited is obligated to Midtown Madison and Atalaya for the amount of their losses under the Credit Agreement, including but not limited to the unrecovered portion of the Outstanding Amount, and the costs associated with efforts to recover thereon.

CLAIMS FOR RELIEF
FIRST CLAIM FOR RELIEF
(Breach of Contract)

38. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as if set forth herein in full.

39. On March 4, 2019, Plaintiffs entered into a valid and binding agreement with Defendant Whited (the Validity Guaranty) in which Whited agreed that he would guaranty, be liable for, and indemnify Plaintiffs from any loss suffered in connection with the Loan transaction described in the Credit Agreement in connection with certain Trigger Events.

40. Although Plaintiffs have fully performed their obligations under the Validity Guaranty, Defendant has materially breached the same by, *inter alia*, the occurrence of such Trigger Events and his failure to guaranty or indemnify Plaintiffs for losses suffered in connection with the Loan transaction described in the Credit Agreement.

41. As described herein, Plaintiffs have suffered damages by reason of Defendant's breach of the Validity Guaranty in an amount to be determined at trial, which shall be in excess of $75,000.

SECOND CLAIM FOR RELIEF
(Declaratory Judgment)

42. Plaintiffs reallege and incorporate by reference each and every foregoing paragraph of this Complaint as if set forth herein in full.

43. Under the Validity Guaranty, upon the occurrence of a Trigger Event, Whited's liability to Plaintiffs includes the payment, on demand, of any out-of-pocket expenses, including reasonable attorneys' fees and expenses arising from the enforcement of rights under the Validity Guaranty.

44. Upon information and belief, Whited's actions and statements indicate that he does not believe he has a continuing obligation to pay these amounts on demand.

45. Accordingly, an actual, present, and justiciable controversy has arisen between Plaintiffs and Defendant concerning Defendant's obligation to guaranty or indemnify Plaintiffs for losses suffered in connection with the Loan transaction described in the Credit Agreement, and to pay, on demand, any out-of-pocket expenses, including reasonable attorneys' fees and expenses arising from the enforcement of rights under the Validity Guaranty.

46. Plaintiffs seek declaratory judgment from this Court that Defendant is obligated to guaranty or indemnify Plaintiffs for losses suffered in connection with the Loan transaction described in the Credit Agreement.

WHEREFORE, Plaintiffs demand entry of a judgment as follows:

(a) on the First Claim for Relief, compensatory damages in an amount to be determined at trial, but not less than $75,000; and

(b) on the Second Claim for Relief, judgment according to the declaratory relief sought; and

(c) such other further relief to which Plaintiffs may be entitled as a matter of law or equity, or which this Court determines to be just and proper.

HARRIS ST. LAURENT LLP

By:    /s/ Adam B. Oppenheim

Adam B. Oppenheim
Yonaton Aronoff

*Attorneys for Plaintiffs Atalaya Special Opportunities Fund VII LP and Midtown Madison Management LLC*